IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Keenan Gibson<br><br>Defendant. | Criminal Action No. 16-46-RGA |

### MEMORANDUM ORDER

Defendant Keenan Gibson is facing drug and gun charges after police executed a search warrant at his home. The search warrant was issued based on an affidavit by Detectives Justin Wilkers and Jose Cintron of the Wilmington Police Department. (D.I. 14-1). Defendant has filed a motion to suppress the evidence obtained during this search. (D.I. 26). Defendant argues that the search warrant affidavit lacked probable cause and did not sufficiently support the search warrant of his residence at 2211 North Washington Street, Apartment 3. (*Id.* at 7). Therefore, Defendant requests that all evidence obtained as a result of the search be suppressed, as the evidence was illegally seized. (*Id.*).

### I. SUFFICIENCY OF THE WARRANT

Defendant claims the affidavit of probable cause did not sufficiently establish the reliability of the confidential informant used in the controlled buy, that the surveillance of defendant's apartment was not sufficiently detailed in the probable cause affidavit, and that the affidavit also lacked detail regarding the circumstances of the controlled buy. (*Id.* at 2-5). Defendant also contends that because the exact date of the confidential informant's alleged buy was not specified in the affidavit, it is unclear whether the information was fresh, or "arguably

1

stale, five-day-old information." (*Id.* at 5). Therefore, Defendant asks that all evidence obtained as a result of this illegal stop and seizure be suppressed pursuant to the "fruit of the poisonous tree doctrine." (*Id.* at 7, citing *Wong Sun v. United States,* 371 U.S. 471 (1963)).

Defendant first argues that the affidavit of probable cause did not sufficiently establish the reliability of the confidential informant who tipped off law enforcement that drug sales were being conducted from Defendant's apartment, and that the only indication of the informant's reliability provided in the affidavit was the statement that he was a "past proven reliable confidential informant." (D.I. 26, at p.2). Defendant argues that an affidavit "must recite facts, not mere conclusory assertions of the officer, which demonstrate the credibility of the informant." (*Id.*, quoting *United States v. Bush*, 647 F.2d 357, 362 (3$^د$ Cir. 1981). Defendant states that there is no such factual representation here, and nothing in the affidavit describing why the officers considered the informant to be reliable, such as how many times the affiant and the informant have worked together, over what time period the affiant has worked with the informant, and how many times the informant has completed a purchase for the affiant, and whether any of the informant's assistance has ever led to a conviction of another person. (D.I. 28 at pp. 2-3).

Second, Defendant argues that the alleged surveillance of Defendant's apartment was not sufficiently detailed in the probable cause affidavit. (D.I. 26 at p. 3). Defendant notes that there was no information provided with respect to the details of the "surveillance" allegedly conducted at Defendant's residence after receiving the informant's tip. (*Id.*). The affidavit "does not detail when the surveillance was conducted – over what period of time the surveillance took place, over how many days, or even the date and time such surveillance was made in relation to the date of the tip or the date of the alleged buy." (*Id.* at 3-4). Defendant argues further that "the search

2

warrant affidavit not only lacks specificity with respect to exactly what activity was observed, by whom it was observed, and when it was observed, it provides no information tying the individuals allegedly seen entering the building to Apartment 3 in order to buy drugs, as suggested in the probable cause affidavit." (*Id.* at 4).

Third, in addition to lacking information regarding the confidential informant's reliability, Defendant additionally argues that there is "a lack of any details from the informant concerning the controlled buy." (*Id.*). Among the details lacking, Defendant argues, is that "there is nothing in the affidavit to indicate how much buy money [the informant] was given, and how much marijuana he bought with the buy money." (*Id.* at 4-5). Defendant also notes that the affidavit "contains no information that the confidential informant saw quantities of marijuana or packing materials, or scales, or anything to corroborate that drugs were regularly being distributed from the apartment." (*Id.* at 5). Defendant argues that these details were necessary to establish probable cause to support a valid warrant, and yet they were not provided. (*Id.*).

Finally, Defendant argues that the affidavit "is not sufficiently clear as to whether the date of the alleged buy was fresh information or arguably stale, five-day-old information." (*Id.*). The affidavit only specifies "the third week of March 2016" as the date of the controlled buy. (D.I. 29 at 15). Along with lacking specificity regarding the date of the controlled buy, Defendant also contends that the affidavit "does not include any representations that the confidential informant observed any evidence which would indicate drugs were regularly being sold from the unit." (D.I. 26 at 5). Since the affidavit did not contain these material facts, Defendant argues that "the affidavit did not sufficiently establish that drugs would be found in the apartment days after the alleged controlled buy took place." (*Id.*). Defendant cites *United States v. Hython,* 443 F.3d 480 (6th Cir. 2006), as supportive of the claim of staleness. In

3

*Hython,* a warrant was found to be void for staleness "because neither the affidavit nor the search warrant specified the date on which the transaction at the defendant's house took place." (*Id.* at 483).

In response, the Government argues that the issuing judge had a substantial basis to find that there was probable cause to search Defendant's residence for drugs and related evidence. (D.I. 29 at 1). This is based on the officers corroborating information from a "past-proven and reliable" informant that Defendant was selling drugs from his residence by making a controlled purchase of marijuana from Defendant, who is a felon with prior drug and firearms convictions, as well as by conducting surveillance that further corroborated ongoing drug activity (*Id.*). In addition, the Government contends that the Detectives executed the search warrant in good faith, and that the affidavit was not so lacking in indicia of probable cause as to render the officers' belief in its existence unreasonable. (*Id.*). For these reasons, the Government argues that Defendant cannot show that the officers culpably violated his Fourth Amendment rights, and that Defendant's Motion to Suppress should be denied. (*Id.*).

The Government first argues that the affidavit contained facts providing the issuing judge with a "substantial basis to believe that evidence of drug dealing would be found inside the Defendant's residence." (D.I. 29 at 4). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 214 (1983). The Government contends that the information received from a previously-utilized informant that drug sales were occurring in Defendant's residence was corroborated when the informant completed the controlled purchase of marijuana from Defendant's residence and identified Defendant as the person who sold him the marijuana. (D.I. 29 at 4). The Government argues further that other information provided in the affidavit,

4

including the surveillance information indicating drug activity at Defendant's residence and Defendant's criminal history, further corroborate the informant's information. (*Id.* at 4-5, citing Exhibit "A," p.4). According to the Government, the "totality of the investigation" established a "substantial likelihood that Defendant had been selling drugs out of his apartment for at least a month," since the confidential informant first described the alleged activity in early February. (D.I. 29 at 5).

Second, the Government argues that Defendant's "attempt to segregate the affidavit into compartmentalized portions is contrary to the totality of the circumstances mandated by the Supreme Court." (*Id.*). In support, the Government cites *United States v. Arvizu*, 534 U.S. 266, 274 (2002), holding that "evaluat[ing] and reject[ing] . . . factors in isolation from one another does not take into account the 'totality of the circumstances.'"

The Government replies to Defendant's assertion that the background of the informant was not sufficiently detailed, arguing that "there is no requirement that the past use of an informant by law enforcement be discussed in an affidavit." (D.I. 29 at 5). This is supported by *United States v. McKinney*'s holding that "controlled buys add great weight to an informant's tip." 143 F.3d 325, 329 (7th Cir. 1998). The Government also contends that there is no requirement that an affidavit specify the amount of marijuana purchased, "so long as . . . common formalities are observed to a substantial degree." *United States v. Nelson*, 350 F.3d 1201, 1214 (10th Cir. 2006). These formalities include:

> search[ing] the informant for money and contraband prior to the buy; giv[ing] the informant money with which to purchase the narcotics, transport[ing] the informant to the suspect residence, disappear[ing] while inside the suspect residence, and emerg[ing] from the suspect residence; search[ing] the informant upon exiting the suspect residence, and receiv[ing] the narcotics from the informant.

(*Id.*).

5

Finally, the Government contests Defendant's claim that the warrant was stale. (D.I. 26 at 5). The warrant states that the controlled purchase occurred during the "third week of March," meaning the earliest the controlled purchase could have occurred was March 13, 2016. (D.I. 29 at 6). Though "third week of March" is somewhat ambiguous, the common understanding is that a week begins on either Sunday or Monday. The Government is thus correct that Sunday, March 13, 2016 is the earliest date that could be considered within the third week of March. *The 7 Days of the Week*, https://www.timeanddate.com/calendar/days/. The Government contends a search warrant "executed at most five days after the last control[led] purchase of drugs is not stale." (D.I. 29 at 6). In support, the Government references *United States v. Caple,* 403 F. App'x 656, 659 (3rd Cir. 2010), which held that information in an affidavit was not stale when the "last controlled transaction took place only weeks before the warrant was issued."

A judge should consider the "totality of the circumstances" in evaluating whether a warrant authorizing a search and seizure is constitutionally valid. *Gates,* 462 U.S. at 266. Here, the Justice of the Peace relied on information received by officers from a previously-utilized informant that drug sales were occurring inside the Defendant's residence. (D.I. 29, Exhibit "A," p. 4, ¶¶ 1-2). The information was corroborated a month later when the informant completed a controlled purchase of marijuana from Defendant's residence, and identified Defendant as the individual who sold him the marijuana. (*Id.* at ¶ 5). The surveillance observation indicating drug activity at Defendant's apartment building further corroborated the information provided by the informant. (*Id.* at ¶4). In determining whether probable cause exists, the issuing judge is asked "simply to make a practical, common sense decision whether, given the facts before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 214. The duty of the reviewing court is "simply to ensure that the

6

magistrate had a substantial basis for concluding that probable cause existed." (*Id.*). The tip from the informant, corroborated by the controlled purchase of marijuana from Defendant's residence, as well as the surveillance observation indicating drug activity at Defendant's apartment building, form a substantial basis for granting the warrant. Therefore, there is no basis for suppressing the evidence.

## II. GOOD FAITH EXCEPTION

The Government further argues that even if the warrant were found to lack probable cause, Wilmington Police Detectives executed the warrant in good faith, so the evidence should not be suppressed. (D.I. 29 at 7). Suppression is inappropriate when police execute a search warrant that is later found to violate the Fourth Amendment, "unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (*Id.*, citing *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984)). When an officer "acting in objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," in most cases "there is no police illegality and nothing to deter." *Leon*, 468 U.S. at 921. The Wilmington Police Detectives acted in good faith and within the scope of the warrant, and there is nothing in the record to indicate that a reasonably well-trained officer would know or suspect that the search was illegal.

There are "four narrow circumstances" where the good faith exception has been held to be inapplicable and where an officer's reliance on a warrant would be "unreasonable." (D.I. 29 at 7). The exceptions are: 1) the judge issued the warrant in reliance on a deliberately or recklessly false affidavit; 2) the judge abandoned his or her judicial role and failed to perform in a neutral and detached manner; 3) the warrant was based on an affidavit so lacking in indicia of

7

probable cause to render official belief in its existence entirely unreasonable; or 4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1106-07 (3$^d$ Cir. 1989) (citing *United States v. Medlin*, 798 F.2d 407 (10th Cir. 1986) (internal citations omitted)). The search warrant issued by the Justice of the Peace for Defendant's residence does not fall into any of the four exceptions.

Thus, even if the search warrant was improperly approved, Detectives' execution of the warrant was in good faith, so the evidence obtained searching Defendant's residence should not be suppressed.

### III. "SHORT CUTS" IN PROCESS OF AFFIDAVIT

Defendant alleges that the Government took "short cuts" in the search warrant process that "raise questions as to the sufficiency and validity of the information provided to the issuing court" and has requested a hearing to address these concerns. (D.I. 26 at 6). Defendant contends that the warrant was not docketed with the issuing court, as the warrant was submitted to Justice of the Peace Court No. 20, but approval of the warrant was authorized by Justice of the Peace Court No. 10, and that there was no docket number for the warrant issued, but only the docket number for the case. (*Id.*). The Government has provided a letter from the Justice of the Peace Courts giving adequate explanation for these alleged inconsistencies. The warrant was stamped by Justice of the Peace Court No. 10 because the time stamp for Justice of the Peace Court No. 20 was not functioning properly at the relevant time. The warrant was signed and returned to Justice of the Peace Court 20 and not Court 10. Additionally, the only items placed on a search warrant once it has been issued are the time stamp and seal, so a docket number is not required.

For these reasons, the motion (D.I. 26) is **DENIED**.

IT IS SO ORDERED this  16  day of June 2017

                                              /s/ Richard G. Andrews
                                              United States District Judge